## J. Byron Turck, Administrator, Appellee, v. City of Chicago, Appellant.

### Gen. No. 14,179.

1. VERDICT—*when not excessive.* Held, that a verdict of $5,000 rendered in an action for death caused by wrongful act of the defendant was not excessive, where it appeared that the plaintiff's intestate at the time of his death was an industrious and healthy man, willing and able by hard work to support his wife and children, his family being large, most of the children under age and several of them very young.

2. EVIDENCE—*who cannot complain of unresponsive answer.* That an answer containing evidence otherwise unobjectionable is not responsive to the question, is not an objection that a party not asking the question can avail himself of.

Action in case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook county; the Hon. AXEL F. CHYTRAUS, Judge, presiding. Heard in this court at the October term, 1907. Affirmed. Opinion filed February 4, 1909.

EDWARD J. BRUNDAGE and JOHN R. CAVERLY, for appellant; EDWARD C. FITCH, of counsel.

ELMER & COHEN, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

This is an appeal by the city of Chicago from a judgment of the Superior Court against it, for $5,000, rendered on March 16, 1907, in favor of the plaintiff Turck as administrator of Charles Klein, deceased. The action is under the "Campbell Act," so-called, for causing the death of plaintiff's intestate by negligence. The negligence charged in the original and amended counts of the declaration in the cause was that of suffering and maintaining a defective sidewalk on the east side of Lock street near Bonaparte street, in the city of Chicago, after notice of its unsafe and dangerous condition, so that by means thereof

Charles Klein fell and was so badly injured that he afterward died of the injuries. The various counts of the declaration alleged in due form also the survivorship of a widow of Klein and of three sons and five daughters, for whose benefit the administrator brought this suit under the statute.

The defendant pleaded the general issue. The cause was submitted to a jury, who found a verdict for $5,000 in favor of the plaintiff. A motion for a new trial and one in arrest of judgment were denied and the judgment herein appealed from followed. There is no contention that the sidewalk was not defective at the time of the accident (January 10, 1904), nor that it had not been so long enough to impute notice to the city. Nor is there any claim that the plaintiff's intestate knew of this defective condition. It is also admitted that he fell into a hole in said sidewalk on the night in question, and that he was taken home in a patrol wagon and was laid up for a time.

But the controversy in the case arises on the question whether this accident, with its resultant injury, was the cause of the death of Klein, which occurred just over four months from the date of the accident from a hemorrhage in the brain resulting in paralysis. At the time of this apoplectic seizure Klein had been working for about two weeks in heavy manual labor (pulling ice at a packing plant).

On his death an inquest was held, and the coroner's jury, by a verdict which was received in evidence in this case, found that the deceased "came to his death on the 12th day of May, A. D. 1904," "from injuries received causing paralysis, from a fall on the sidewalk on Lock street south of Archer avenue, some time in February", etc.

The contention of the city of Chicago is that there is no sufficient evidence that the fall on the sidewalk was the proximate cause of the intestate's death— indeed, that the evidence proves that the apoplexy or

brain hemorrhage was entirely independent of the fall. For these reasons it is insisted that the judgment should be reversed without a remandment of the cause. But if this claim of the appellant is not allowed, it is contended that erroneous rulings on evidence and on instructions were made, which entitle the defendant at least to a new trial. It is also claimed that the verdict is excessive and shows by its size that it is the result of passion and prejudice. It is argued that the sum of five thousand dollars was too great to award as the measure of the pecuniary loss to the widow and children for the death of an unskilled laborer forty-three years old, "addicted to the excessive use of alcoholic beverages". We think this last qualification unjustified by the evidence. An effort seems to have been made in the cross-examination of some of the plaintiff's witnesses and in the direct examination of witnesses for the defendant, to establish this proposition; but it resulted in nothing more than showing the fact that the deceased was not a total abstinent, and that on festive occasions members of the Platt Deutsche Guild had seen him with his countrymen "feeling happy, like the rest of us", "with a little more than he should have". None of the witnesses were willing to stigmatize him as a drunkard or even an intemperate man, or given to "over drinking". He seems from the evidence in the record to have been an industrious man and a healthy one, willing and able, before his injury, by hard work to support his wife and children. His family was large and most of the children under age, several of them very young. We do not think that the verdict was too large if the death was the result of the accident.

Whether the death was the result of the accident was a question left to the jury under the following instructions:

"Instruction 4. If you believe from a preponderance of the evidence that the defendant was negligent, as alleged, and that the deceased was injured as a

proximate cause of such negligence, yet unless you also believe from a preponderance of the evidence that the death of the deceased was proximately caused by reason of such negligence, if any, you should find the defendant, City of Chicago, not guilty."

"Instruction 11. The court instructs the jury with respect to ailments claimed by the plaintiff to have caused the death of Charles Klein, plaintiff's deceased, the law requires of the plaintiff before he can recover that he shall show by a preponderance of the evidence that such ailments were the result of the alleged accident and caused Klein's death.

"The jury have no right to guess or conjecture that the ailments which produced his death were the result of said accident. Before plaintiff can recover it must appear by a preponderance or greater weight of the evidence, that the injuries sustained, if any, by reason of a defective condition of the sidewalk were the direct and proximate cause of the death of plaintiff's deceased.

"The burden is not upon the defendant to show that the ailments which produced death arose from any other cause, and if the evidence is evenly balanced between the plaintiff and defendant on that question, the jury must find for the defendant, or if the jury believe that the ailments which produced death arose directly and proximately from any other cause than that alleged, the plaintiff cannot recover in this case, and the jury must find the defendant, City of Chicago, not guilty."

The fourth instruction, as above given, was exactly as it was tendered by the defendant, and instruction 11, although modified by the court from the original draft, substantially so. The modifications corrected it in patent errors, and are not complained of by defendant.

Under these instructions the jury showed by their verdict that from the evidence they found the fact to be that the injuries sustained by Klein by reason of the defective condition of the sidewalk were the direct and proximate cause of his death.

The appellant declares, through its counsel, that the only ground for this holding must have been "expert conjecture riding a fine-spun theory through the nebulous realm of speculation". It insists that the testimony of the plaintiff was "speculation gravely offered as evidence", "mere speculation based upon unwarranted assumptions".

We concede the case to be a close one, and one in which as jurymen reasonable men might well have come to different conclusions, but it is a case in which a coroner's jury on an *ex parte* hearing and a trial jury, after a thorough opportunity for investigation and deliberation, have passed on the question here involved adversely to the contention of the defendant and favorably to that of the plaintiff. It is a case too, in which the expert opinions, so lightly regarded by the defendant's counsel, were given by practitioners shown to be of excellent standing and authority in their profession. Their testimony was met by that of medical experts of equal standing whose assistance in examining the opinions and theories of the plaintiff's witnesses the defendant's counsel may be presumed to have had. The fullest opportunity for cross-examination of all the experts was afforded and the opinions which the jury apparently adopted as their guides seem to us by no means destitute of weight.

It could serve no good purpose for us here to discuss the expert evidence or compare it. There was evidence tending to show actual, observable conditions from the time of the accident until the death, which we may briefly allude to, however, as forming the basis of the opinions of the experts who testified for the plaintiff in answer to hypothetical questions. Klein, who was rather a heavy man, and had been a healthy and hardworking one, fell through a hole in the sidewalk on the night of January 10, 1904. The sidewalk was five and one-half feet above the ground. He was found so placed by the fall, "hanging in the

hole,'' that he had to be helped out by a man who was called to his assistance. He was, by the testimony of that man, apparently badly hurt. He was conscious but moaning with pain, and could not at first speak. A police ambulance was called. Two policemen came with it. They placed Klein in the ambulance and carried him to his home two miles away. He complained of his knee being hurt. The policemen carried him into the house and placed him in a chair and immediately went away. His wife put him to bed, but he did not sleep that night. One of his legs was considerably swollen and discolored. He seemed to be tired and suffering pain. During the next day and the two following he complained that it hurt him to walk. He could not lift his arm. When he spoke he seemed tongue-tied, so that he could not be well understood. In two or more days after the accident there developed difficulty in moving the fingers of his right hand. After two or three weeks had gone by he still was unable to sleep normally, and complained of continual headaches.

January 14th, four days after the accident, he was in a general dazed condition with symptoms of shock. He showed still thickness and difficulty of speech, and a chronically spasmodic condition of the right hand. The right knee was swollen and red; the knee cap and the outer upper side of the right thigh were discolored. There was swelling and redness of the muscles of the back from the shoulder-blade down across the lumbar regions on both sides. He complained of severe pain in the right knee; inability to move; pain in the right hip all along the thigh; pain in the back and sensitiveness to touch. His right elbow was swollen, inflamed and abraded.

A doctor called to attend him saw him at his home at slight intervals for a month (up to February 13, 1904), and the symptoms having then improved discontinued his visits, but saw him afterwards once or twice at his (the doctor's) office, the last time more

than two weeks, but less than a month before April 23, 1904. A child having been born to Mrs. Klein in the meantime, and the older children not getting much from their work, Klein said that he had to go out to work, and went to seek a job. He had before that, about three weeks after the accident, attempted to shovel snow, but came into the house and laid down, complaining of being unable to see anything and of cramps in his whole body. When in March he sought work he found it in an ice gang at a packing house, and worked pulling ice from March 30th to April 16th. But he then walked with difficulty, found difficulty in dressing without assistance, and lifted his right foot peculiarly in his gait. He quit work on April 16th and from that time had to stay at home and, as his wife expresses it, had "cramps after that always," "couldn't do anything." April 23rd the doctor who attended him before he went to work was called again, and then found him suffering from cerebral hemorrhage with paralysis of the left arm and leg. That condition had not existed when the doctor saw him last, which was, as has been noted, more than two weeks but not more than a month before, but might have existed for any length of time elapsing since the doctor's last observation of him.

At that time, April 23rd, Klein showed mental obscurity, thick, difficult speech, drawing of one side of the face and contraction of the other side, chronic spasms of the left arm and hand and left leg and foot, contracted pupils of the eyes and vomiting. He had also pains in the forehead and temples and sharp, throbbing pain in the left hand and arm and in the left leg and foot.

After the doctor's second visit at this time, he sent Klein to the Cook county hospital, where he remained until May 6th, when he was brought back to his house. He then had the same symptoms, but was much worse. There was complete paralysis on the left side, of left arm and left leg, spasmodic contraction on one side

of the face and relaxation of the other side, a very red and bloated face, dilated pupils, extreme restlessness with spasmodic contraction of the right arm and leg, and unintelligible speech. The case grew gradually worse until death on May 12th.

It was on this state of things, so far as they were observed by the physician who attended him after January 14th, that that physician gave his opinion that the injury which Klein received at the fall on January 10th was the cause of his death, that the traumatism caused inflammation of the blood vessels and a clot, which finally produced a rupture or an aneurism, the ultimate result of which was the cerebral hemorrhage.

It was on this state of things that Dr. Kiernan and Dr. Alexander, both physicians of high standing, in answer to hypothetical questions, gave their opinion to the same effect.

We do not think this was properly to be called mere conjecture, speculation or guessing. It was the legitimate expression of expert opinion. The jury were told the facts, and they were given the opinions. They had the right to make their conclusions, and they did so.

We do not mean that the evidence we have noted concerning the condition of Klein from the time of the accident to the time of his death was unquestioned by the defendant. Although we read Mrs. Klein's testimony in the sense indicated, the defendant insists that nothing is known of Klein's condition or actions between April 16th and April 23rd. It was a fair matter of argument to the jury, and it was doubtless argued to the jury, that immediately after the accident he seemed to complain of nothing but his knee, that the doctor who was called to him the next day observed no further injury, on a cursory examination, and was discharged and another physician almost immediately afterward summoned; that a considerable part of the evidence above noted was the interested

testimony of the widow; that Klein reported himself to his sick benefit society, the Platt Deutsche Guild, as recovered from the effects of this accident on February 23rd, which was a week after his physician's visits ceased for two months and more, and that with the exception of a little slower walk than some years before, when the foreman of Swift's icing gang had known him, that foreman noticed nothing about him when he came to work in March, 1904, different from before. It is true, too, that expert medical men, also of high standing and great experience, testified in answer to hypothetical questions, that on the case presented in the questions they saw no connection between the accidental injuries and the death. But the value of the answers in enabling the jury to form an opinion on the question involved depended not only on the weight of the witnesses' authority, but also on whether the hypothetical questions contained all that the evidence fairly tended to show concerning Klein's physical condition after the accident and down to the time of the death. It does not seem to us that they did, and the jury may have so considered and given much less weight to the defendant's expert witnesses on that account.

At all events the jury had the evidence before them from which they could properly draw legitimate and reasonable inferences, which, although falling short of absolute and mathematical certainty, would be something more than conjecture, speculation or guesswork. We must under the record in this case, we think, consider them to have done so, and allow their verdict to stand.

We find no error in the rulings on the questions, hypothetical or otherwise, to which objection was made by the defendant. That an answer containing evidence otherwise unobjectionable is not responsive to a question, is not an objection, we think, that the party not asking the question can avail himself of. We do not think that the plaintiff's hypothetical ques-

tions, or any of them, contained in their recital the mere opinions as distinguished from the observations and positive statements of fact of other physicians, as did that animadverted on in Chicago v. France, 124 Ill. App. 648.

Nor do we think there is any just ground for complaint on the part of the defendant as to the instructions.

Certainly the record amply shows that the defendant disclaimed and waived any defense based on the absence of negligence—fully admitting that the negligence existed. If plaintiff's instruction 1 was defective, therefore, it could not have been injuriously so. There is no error in plaintiff's instructions 2, 3 or 5, as we view them. City of Chicago v. Major, 18 Ill. 349; North Chicago Street Railroad Co. v. Kaspers, 186 Ill. 250.

Defendant's refused instruction 12 was fully covered by those given—Nos. 4 and 11—which we have above quoted.

The judgment of the Superior Court is affirmed.

*Affirmed.*